IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBIE SPEAR, et al. | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| WESTFIELD INSURANCE COMPANY | : | NO. 15-cv-00582-RAL |
| Defendant. | : | |

**RICHARD A. LLORET**                                                         June 11, 2015
**U.S. Magistrate Judge**

<u>**OPINION**</u>

Defendant, the Westfield Insurance Company ("Westfield"), has filed a Motion for Judgment on the Pleadings, asking me to dismiss a breach of contract claim filed by Barbie Spear and Alliance Holdings, Inc. Employee Stock Ownership Program ("Plaintiffs"). *See* Motion for Judgment on the Pleadings, Doc. No. 9; Brief in Support of Motion for Judgment on the Pleadings ["Def. Br."], Doc. No. 9-2. Westfield argues that Plaintiffs' breach of contract claim is time-barred based on the terms of the issued policy. *See* Def. Br. at 1-2. Plaintiffs argue that granting a motion for judgment on the pleadings would be premature at this stage of the litigation. *See* Plaintiffs' Memorandum of Law in Opposition to Motion for Judgment on the Pleadings ["Pl. Br."], Doc. No. 13, at 5-6.

After careful review, I will deny Westfield's motion.

    **I.**     **Factual Background**

This dispute arises out of an employee theft and forgery policy that the Alliance Holdings, Inc. Employee Stock Ownership Program ("ESOP") purchased from Westfield. Covering a period of three years from December 1, 2010 to December 1,

2013,[1] the policy insures for up to $1,000,000.00 any theft, forgery, or alteration committed by an employee of the insured. *See* Doc. No. 1, 37-38.[2] The Plaintiffs initiated this action by filing a Writ of Summons in the Pennsylvania Court of Common Pleas in Philadelphia County on October 30, 2014. Doc. No. 1, at 57 (docket sheet for *Barbie Spear, et. al. v. Westfield Ins. Co.*, No. 3872, Oct. Term (C.C.P. Phila. 2014)). The Plaintiffs filed a formal Complaint on January 30, 2015 and Westfield removed this action to federal court on February 6, 2015. *See* Def. Br. at 2.

    As summarized by Westfield, this disputed claim arises out of monetary losses stemming from an "alleged theft of ESOP plan assets by its former trustee, former CEO, president, and director of Alliance Holdings, Inc., David B. Fenkell ('Fenkell')". *Id.* (citations omitted). Alliance alleges that it "discovered" his theft on October 31, 2012. Def. Br. at 3. Westfield states that 18 months after the ESOP reported the loss, the ESOP provided a revised Proof of Loss claim to the insurance company, which included a Claim Narrative spelling out, in some detail, the nature of the actions allegedly undertaken by Mr. Fenkell while he served as sole trustee of the ESOP. *See id.* This Claim Narrative, attached in the Defendant's Answer, states that "[i]t was not until July and August of 2012 that Alliance *began to discover* Fenkell's theft." *See* Doc. No. 2-1, at 35 (emphasis added); *see also* Def. Br. at 3 (noting the "Claim Narrative expressly admits that Fenkell's actions and inaction were discovered in July and August 2012 – not October 31, 2012, the discovery date originally reported to

---

[1] Additional pleadings included in the Answer to the Complaint state that the ESOP first purchased coverage on December 1, 2004. *See* Doc. No. 2-1, at 37.
[2] Because of the different pagination in the attached exhibits, these citations refer to the numbers found in the Eastern District of Pennsylvania's ECF system.

2

Westfield"). Westfield argues that this does not match the October 31, 2012 date originally reported to the insurance company. *See* Def. Br. at 3.

Following the submission of the claim to Westfield, the company denied coverage on June 24, 2014. *See id.* (citations omitted). In their brief, Westfield notes that the Alliance ESOP "made no attempt to file a Writ of Summons in July or August, 2014 and comply with the contractual suit limitation [of two years], even though it had counsel actively representing their interests during the claims investigation process." Def. Br. at 4 (citations omitted). As such, the Plaintiffs were aware that their breach of contract claim was time-barred pursuant to the terms of the policy,[3] and judgment on the pleadings should be granted. *See id.* Plaintiffs state that the proof of loss was "ongoing" as of October 15, 2012 and that a detailed proof of loss was not provided to Westfield until June 16, 2014. *See* Pl. Br. at 3 (citation omitted). Their position seems to indicate that the investigation of Fenkell's alleged wrongdoing effectively "tolled" the time period for reporting the loss to Westfield. *See id.* at 6.

## II. Legal Standards

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) mirrors the Rule 12(b)(6) standard. See *SB Pharmco Puerto Rico, Inc.*

---

[3] That policy states that an insured may not bring any legal action "[u]nless brought within 2 years from the date you 'discovered' the loss." *See* Doc. No. 2-1, at 19. In the "definitions" section of the insurance policy, it states
> 'Discover' or 'discovered' means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not be known.
> 'Discover' or 'discovered' also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this policy.

*See id.* at 25.

*v. Mutual Pharmaceutical Co.*, Inc., 552 F. Supp. 2d 500, 505 (E.D. Pa. 2008); *Constitution Bank v. DiMarco*, 815 F. Supp. 154, 157 (E.D. Pa. 1993). Federal Rule of Civil Procedure 12(b)(6) allows dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order for a complaint to survive a motion to dismiss under 12(b)(6), the complaint must allege facts that, if true, would state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Courts must conduct a two-part analysis when reviewing a complaint challenged under Rule 12(b)(6). *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d. Cir. 2009). The first part of the analysis requires courts to separate factual and legal claims, and then accept all well-pled facts as true while disregarding legal conclusions. *Id.* at 210-11. Second, a court must determine if those facts in the complaint show a plaintiff has a plausible claim for relief. *See id.* at 211 (citing *Iqbal*, 556 U.S. at 679). Mere allegations absent any factual support will not survive a motion to dismiss. *Id.*

The Federal Rules impose limitations on what a court may consider when deciding such a motion, which includes "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 299 (2d ed. 1990)); *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988)). Generally, when considering a motion for judgment on the pleadings, a court "may not consider matters extraneous to the pleadings." *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1425 (3d Cir. 1997). In some cases however, a court may consider documents outside the pleadings if

4

that document is "integral to or explicitly relied upon in the complaint." *See Mele v. Federal Reserve Bank of New York*, 359 F.3d 251, 256 n. 5 (3d Cir. 2004) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). *Mele* also went on to state that documents that "form[] the heart of [a] complaint. . ." would fall within this exception. *See id.* (citing *In re Burlington Coat Factory*, 114 F.3d at 1426).

A) *The Westfield Policy and other documents*

The insurance policy is the center of this dispute. Westfield argues that I should find the two-year contractual limitations period valid and enforceable. *See* Def. Br. at 5. They also ask that I consider documents in addition to the pleadings when deciding this motion. *Id.* at 5 n. 3. Plaintiffs do not argue that the contractual limitations period is invalid. They do argue that I should not consider any documents attached to the Defendant's Answer, including material related to the policy. *See* Pl. Br. at 8.

I find that the two-year contractual limitations period is valid and enforceable. Pennsylvania recognizes contractual modification of statute of limitation periods. *See Toledo v. State Farm Fire & Cas. Co.*, 810 F. Supp. 156, 157 (E.D. Pa. 1992) (citing *General State Authority v. Planet Ins. Co.*, 346 A.2d 265, 267 (Pa. 1975)); *Lardas v. Underwriters Ins. Co.*, 231 A.2d 740, 741-42 (Pa. 1967). Generally, Pennsylvania law allows four years to bring a breach of contract claim. *See* 42 Pa. Cons. Stat. § 5525. Parties may agree to a shorter limitations period so long as it provides a "reasonable" time period within which to seek relief. *See McElhiney v. Allstate Ins. Co.*, 33 F. Supp. 2d 405, 406 (E.D. Pa. 1999) (citations omitted). A one-year time period is reasonable. *See id.* (citations omitted). The parties here agreed to a two-year time period, which is reasonable and enforceable under Pennsylvania law.

I can consider documents outside the pleadings, in particular the insurance policy, which is attached to and forms the "heart of the complaint," paraphrasing the standard announced in *Mele. See* 359 F.3d 251, 257 n. 5. Plaintiffs argue that I should not consider any documents attached to the Defendant's Answer. *See* Pl. Br. at 8-9. I agree. *See Pension Benefit,* 998 F.2d at 1196 (a "court may consider an undisputedly authentic document that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") The court in *Pension Benefit* considered a purchase and sale agreement that was indisputably authentic, but declined to consider other documents attached to the motion. *Id.,* at 1197.

I may consider "matters of public record." *Id.* at 1196. "[A] court may take judicial notice of a [court] filing in a prior case in ruling on a motion to dismiss, but it can only do so to establish the existence of that filing, not for the truth of the facts asserted therein." *See Burton v. Nationstar Mortg.*, No. 14-5059, 2015 WL 1636956, at *2 (E.D. Pa. April 13, 2015) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 222 (3d Cir. 2004), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, (2007)); *cf.* 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 299 (2d ed. 1990) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record … also may be taken into account."). These public documents may also include "court files, records and letter of official actions or decision of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion." *See Arizmendi v. Lawson*, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996).

The sum of all this is that I may examine (a) the complaint; (b) the insurance policy, a copy of which is attached to the complaint; (c) the October 31, 2012 proof of loss, relied upon in the complaint, a copy of which is attached to plaintiff's response to the motion for judgment (Doc. No. 13-1, at 12 (ECF pagination)); and (d) matters of public record, though not for the truth of matters contained in the record, but as proof that a party to the action had notice of claims or allegations. I may not consult the two proofs of notice attached to the Answer as Exhibit B, neither of which are relied upon in the Complaint.

Attached to the Plaintiffs' brief in opposition is an affidavit signed by Barbie Spear, the trustee of the Alliance ESOP. *See* Doc. No. 13-1. The affidavit establishes a cohesive timeline of the events, upon which I may also rely, since it is not disputed by the plaintiff.

*B) The meaning of "discovery"*

To understand what "discovery" means, I turn first to the plain language of the insurance policy. The policy offers two definitions of discovery:

> 'Discover' or 'discovered' means the time when [the insured] first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.
>
> 'Discover' or 'discovered' also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this policy.

*See* Doc. No. 1, at 48 (reflecting ECF filing). The Westfield policy is clear that an insured need not be in possession of a precise loss figure. The policy language requires only that the insured "become aware" of facts that a reasonable person would assume constitutes a covered loss under the policy.

7

The policy's language calls for an assessment of (1) the facts the insured was "aware" of (2) exactly when the insured was aware of these facts, and (3) whether the facts "would cause a reasonable person to assume" that a loss covered by the policy had been or would be incurred. Plaintiffs argue that "[a] reasonable inference to be drawn from the facts is that nothing was suspected prior to July or August of 2012; from July or August through October, 2012, the Alliance ESOP began to discover certain irregularities that caused the Alliance ESOP to begin an internal investigation and audit on October 2, 2012, and to notify Westfield of a 'potential loss' on October 31, 2012. . ." Pl. Br. at 10.

Turning to the Spear affidavit, I note that on July 2, 2012, Mr. Fenkell expanded the Board of Directors to three individuals, including Ms. Spear. *See* Doc. No. 13-1 ["Spear Aff."] ¶ 4. On August 31, 2012, Mr. Kenneth Wanko was added as a joint check signor for Alliance's checking account, "for the first time giving someone other than Fenkell check signing authority on behalf of Alliance." *Id.* ¶ 5. In early October of 2012, Alliance retained the services of Ballard Spahr, a law firm that retained a forensic accounting team from Deloitte to conduct an internal investigation of Mr. Fenkell's activities. *Id.* ¶ 6. Ms. Spear states that there were "suspicions sufficient to investigate Mr. Fenkell, but *we had not discovered the theft for which we seek recovery from Westfield.*"[4] *Id.* (emphasis supplied). Additional information includes further

---

[4] It is difficult to untangle the dates in these documents. The affidavit states that Exhibit B is an email from Mr. Michael Maitland to Westfield dated October 31, 2012. Exhibit B is in fact a "Fidelity Proof of Loss" form that states the date of loss was discovered on October 15, 2012. *See* Doc. No. 13-1, at 9 (reflecting ECF filings). Exhibit A is the email from Mr. Maitland. *See id.* at 7. Exhibit C, which is supposedly a January 14, 2013 Proof of Loss, is in fact dated October 31, 2012. *See id.* at 12. Exhibit C, in the document, appears to be Exhibit A, as identified in the affidavit.

discussions with Westfield by Mr. Maitland on October 31, 2012. *Id.* ¶ 7. Notable too is that Alliance "began to discover Fenkell's theft" in July or August of 2012. *Id.* ¶ 10.

The Third Circuit and other courts have provided guidance about how to analyze the meaning of "discovery:"[5]

> [w]e understand this discovery standard as comprised of a subjective and objective component: the trier of fact must identify what facts and information the insured actually knew during the relevant time period, and it must determine, based on those facts, the conclusions that a reasonable person could draw from them. Our understanding in this connection comports with prior case law addressing the concept of "discovery" in the fidelity bond context.

*See Resolution Trust Corp. v. Fidelity and Deposit Co. of Maryland*, 205 F.3d 615, 630 3d Cir. 2000) (citing *United States Fidelity & Guar. Co. v. Empire State Bank*, 448 F.2d 360, 365 (8th Cir. 1971)). This definition requires "more than mere suspicions of employee dishonesty or fraud" *See id.* (citing *Fidelity & Deposit Co. v. Hudson United Bank*, 653 F.2d 766, 774 (3d Cir. 1981)). The Court of Appeals has also explained that the general principle is that "the 'discovery threshold is low.'" *See id.* at 631 (citing *California Union Ins. Co. v. American Diversified Savs. Bank*, 948 F.2d 948 F.2d 556, 564 (9th Cir. 1991)).

What remains unclear is exactly what facts Alliance knew, and when. Without precise information about those facts, Defendants ask me to make a decision based on a proof of loss form. The policy itself does not make a statement in a proof of loss form determinative of when a loss was discovered. At most, a proof of loss consists of statements that are evidence about the crucial issue. Depending on circumstances,

---

[5] I also note briefly that one of Alliance's arguments is that the insurance policy contained ambiguities, and any lack of clarity "must be construed against the insurance company. . . ." *See* Pl. Br. at 12. The language provided in the definition section of the Westfield policy, cited above, is clear, concise, and not ambiguous. *Id.* (citing *American Surety Co. of New York v. Pauly*, 170 U.S. 133, 144 (1898)).

those statements may be more or less conclusive on the issue of when the loss was "discovered."

The policy's broad definition of "discovered," and the "low threshold" applied by the Third Circuit, make this a close call. Nevertheless, when considering only the information properly before me, and acknowledging my obligation to construe the well pleaded facts in Plaintiff's favor, it is at least reasonably possible that Alliance had no "more than mere suspicions of employee dishonesty or fraud" until October 31, 2012. *See Resolution Trust Corp.,* 205 F.3d at 630; *Fidelity & Deposit Co.* 653 F.2d at 774. It seems that Alliance was engaged in a complex investigation that was not directed simply at ascertaining the amount or details of a loss, but at trying to find out whether there was a "loss" at all, *i.e.,* whether Fenkell had breached a fiduciary duty to Alliance.

The opinion in *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007 (W.D. Wis. 2012) detailed Fenkell's wrongdoing in regard to the 2007 Trachte transaction at some length. Participants in the Trachte ESOP, who had their accounts spun off into a new ESOP, brought various legal claims against, among others, Mr. Fenkell and Alliance Holdings, Inc.[6] whose actions they alleged rendered their accounts worthless, in direct violation of the Employee Retirement Income Security Act.[7] The Honorable William M. Conley found that Fenkell and Alliance committed fiduciary violations[8] on a number of grounds

---

[6] The Alliance ESOP was a "nominal defendant" in the *Chesemore* case. *Chesemore*, 886 F. Supp. 2d 1007 (caption).
[7] This is a very cursory summation of the *Chesemore* case. The full facts of the case are summarized elsewhere in the opinion. *See Chesemore*, 886 F. Supp. 2d at 1014-40.
[8] I summarize this section only to explain the information available in 2012 that might bear on the interpretation and application of the word "discovered" in the policy. This is not to suggest that I have made a determination about what effect the liability findings in *Chesemore* might have in this litigation, or any other, for that matter.

- Fenkell and Alliance breached their fiduciary duties of loyalty and care under ERISA § 404(a) to the ESOP by using the plaintiffs' accounts for their own purposes.

- Fenkell violated ERISA § 406(b) by dealing with plan assets in his own interest and receiving compensation from a party dealing directly with the plan.

- Alliance was liable as a co-fiduciary for Fenkell's breaches under ERISA § 405(a) and for failing to monitor Fenkell under ERISA § 404(a).

- Equitable relief was appropriate against two other defendants for the fiduciary breaches of Alliance and Fenkell pursuant to ERISA § 502(a)(3).

*See id.* at 1014.

Plaintiffs state that "nothing was suspected prior to July or August of 2012. . . ." *See* Pl. Br. at 10. These "suspicions" arising in July or August of 2012 coincide in time with the decision in *Chesemore*, dated July 24, 2012. The events of the *Chesemore* litigation, on their face, have nothing to do with the events described in the complaint in this case. This case concerns a scheme to funnel money to DBF, a company Fenkell controlled, through transactions with Stonehenge, a firm that had a contract with Alliance. Doc. No. 1, at 14-17. There are also allegations that Fenkell improperly donated ESOP funds to his children's schools. Doc. No. 1, at 17. The *Chesemore* litigation is not related to the events described in this complaint. At best it appears the judgment in that case served as a stimulus to conduct a thorough investigation of Fenkell's dealings. That is not the same as discovering a loss. The one proof of loss form properly before me does not conclusively establish when Alliance knew enough about these breaches of duty that a reasonable person would have concluded there was a covered loss.

Alliance and other plaintiffs filed an action against Fenkell and other defendants on May 1, 2013 that alleges much of the wrongdoing that forms the basis of the claim for coverage in this case. *See Barbie Spear, et al v. David B. Fenkell, et al*, No. 13-cv-

11

02391, Doc. No. 1. Obviously plaintiffs had "discovered" the wrongdoing by May 1, 2013.[9] But the October 30, 2014 filing date is well within the two-year period counted forward from May 1, 2013.

Westfield argues that the Alliance had counsel "actively representing their interest with respect to the instant claims investigation." Def. Br. at 8. This representation extended from at least the June 2014 denial of the claim by Westfield[10] until Alliance finally filed a Writ of Summons in state court. *See id.* at 8-9. Alliance "declined to file a one (1) page Writ of Summons over the course of the next two (2) months through August 2012 prior to the expiration of the suit limitation." *Id.* at 9. Indeed, Alliance did not file a suit until the October 30, 2014 date that might have been suggested in the property loss notice of October 31, 2012. *See* Doc. No. 13-1, at 12. Alliance provides no explanation for the delay, other than opaque references to "very complex" claims. *See* Doc. No. 13-1, Exhibit 1, ¶ 9. This delay occurred even as it had apparently identified the amount of loss to be between $1 million and $3 million. *See id*, Exhibit B. And the claim lingered even as the *Chesemore* litigation continued in the Western District of Wisconsin, and the *Spear v. Fenkell* litigation continued in this court. These facts concededly paint a disconcerting picture. Nevertheless, whether Alliance was represented during the investigation, and whether it might have been prudent to file suit in advance of the earliest conceivable limitations deadline, are not facts that are properly before me.

In the end I am constrained by the dearth of facts in the sources properly before me. What Plaintiff knew about Fenkell's breaches of fiduciary duty toward Alliance,

---

[9] What is not clear (yet) is why the coverage action was not filed until January 30, 2015, 20 months later. Doc. No. 1, at 4.
[10] This denial reiterated the time period for filing a complaint against Westfield. *See* Def.

12

and when Alliance knew it, are the facts that control the date of discovery, under the definition in the policy. At least as far as I can tell now, the covered event in this case was a sprawling, difficult to detect breach of ERISA fiduciary duty. This was not an employee who stole a diamond necklace and an insured waiting on an appraisal before filing a proof of loss. Here, the employer did not even know if wrongdoing had occurred until a complicated investigation took place. I cannot find that mere suspicion constituted "discovery," and I am not certain, at this stage, whether Alliance's knowledge before October 31, 2012 amounted to more than that.

I conclude that a motion to dismiss on the pleadings is not appropriate. I will deny the Rule 12(c) motion and direct the parties to contact my chambers at once to arrange a Rule 16 conference. At that conference I will discuss with counsel a limited period of discovery on the issue of exactly when Plaintiffs discovered their loss.

BY THE COURT:

*s/Richard A. Lloret*
RICHARD A. LLORET
U.S. Magistrate Judge