IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBIE SPEAR, in her capacity as Trustee of the Alliance Holdings, Inc. Employee Stock Ownership Plan, <br><br>and<br><br>ALLIANCE HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>Plaintiffs<br><br>v.<br><br>WESTFIELD INSURANCE COMPANY,<br><br>Defendant. | No. 2:15-cv-00582-RAL<br><br><br><br><br><br>CIVIL ACTION |

RICHARD A. LLORET　　　　　　　　　　　　　　　　　　　　　November 14, 2017
U.S. Magistrate Judge

**MEMORANDUM**

Defendant Westfield Insurance Company has filed a motion (Doc. No. 31) asking me to overrule the objections of Plaintiffs Barbie Spear and Alliance Holding, Inc. Employee Stock Ownership Plan ("ESOP") to Westfield's First Request for Production of Documents. Westfield contends that it is entitled to the production of certain documents produced to the Plaintiffs in related litigations, arguing that the requested documents will be relevant to the resolution of the insurance coverage dispute at issue in this case. The Plaintiffs argue, in part, that their objections are proper pursuant to the terms of the protective agreements governing document production in this matter and an underlying matter.

After careful review of Westfield's Motion and the supporting brief (Doc. No. 31-1, "Def. Br."), the Plaintiffs' Response in Opposition (Doc. No. 37), Westfield's Reply to

Plaintiffs' Response (Doc. No. 38), and considering the arguments of counsel at a hearing on November 13, 2017, I will grant Westfield's motion and overrule the Plaintiffs' objections. I explain my reasons below.

## I. Factual Background

### A. The Insurance Coverage Dispute

This action arises out of the denial of the Plaintiffs' insurance claim under an employee theft and forgery policy that the ESOP purchased from Westfield. The policy provides $1,000,000.00 of coverage for theft, forgery, or alteration committed by an ESOP employee. *See* Doc. No. 1, 37-38.[1] The ESOP filed a claim with Westfield stemming from an alleged theft of ESOP plan assets by its former trustee, former CEO, president, and director. *Id.* Westfield denied coverage on several grounds, including the alleged failure of the ESOP to provide adequate documentation to substantiate their claim, the position that the claimed loss was not covered by the policy,[2] and the contention that the ESOP did not timely notify Westfield of the claim per the requirements of the policy. Doc. 2, Def.'s Answer 23. After Westfield's denial of coverage, the ESOP and Ms. Spear commenced this action against Westfield alleging breach of contract and statutory bad faith. Doc. 1, 10-60.

### B. Chronology of the Insurance Coverage Dispute and the Underlying Liability Action

The Plaintiffs initiated this action by Writ of Summons in the Pennsylvania Court of Common Pleas for Philadelphia County on October 30, 2014. Doc. No. 1, at 57 (docket sheet for *Barbie Spear, et. al. v. Westfield Ins. Co.*, No. 3872, Oct. Term (C.C.P. Phila.

---

[1] Because of the different pagination in the attached exhibits, these citations refer to the numbers found in the Eastern District of Pennsylvania's ECF system.
[2] Doc. 2, Ex. F.

2014)). The Plaintiffs filed a formal Complaint on January 30, 2015 and Westfield removed this action to federal court on February 6, 2015. Doc. No. 1.

The Plaintiffs commenced this action (the "Coverage Action") subsequent to an action captioned *Spear, et al. v. Fenkell, et al.*, E.D. Pa. 2:13-cv-02391-RAL (the "Liability Action"). The Liability Action was initiated by Complaint on May 1, 2013. *Spear* Doc. No. 1. During discovery, the parties to the Liability Action stipulated and agreed to a Protective Order governing discovery and document production. The Protective Order was endorsed by District Judge Schmehl on February 18, 2014. *Spear* Doc. No. 160.

On May 4, 2015, Westfield served the Plaintiffs with Requests for Production of Documents in the Coverage Action. Def. Br. 2. Westfield's requests sought documents produced to and by the Plaintiffs in the Liability Action, documents produced to and by the Plaintiffs in other related actions, documents related to the submission of the Plaintiffs' insurance claim, and the identities of deponents and corresponding court reporters in the Liability Action. *See* Doc. 31-4, 1-5. The Plaintiffs responded with objections on June 4, 2015 and produced no documents in response to Westfield's requests. Def. Br. 3; Doc. 31-4, 6-17.

On May 29, 2015, before the Plaintiffs served their objections to Westfield's requests, Westfield and the Plaintiffs entered into a Stipulated Protective Order ("SPO"). Doc. No. 17. The SPO extended the Protective Order in the underlying Liability Action to the Coverage Action. The SPO expressed agreement between the Plaintiffs and Westfield "that discovery in [the Coverage Action] may require the production of documents and information that one or more parties produced in [the Liability Action]." Doc. No. 17.

Westfield, the Plaintiffs, and all parties to the underlying Liability Action endorsed the SPO, which I entered on May 28, 2015. Doc. No. 17.

Shortly after agreeing to the SPO, the Plaintiffs sought an additional Protective Order staying discovery until the resolution of an earlier dispositive motion filed by Westfield.[3] Doc. No. 19. I denied Westfield's motion on June 11, 2015 (Doc. No. 21), rendering the request for an additional Protective Order moot.

The Coverage Action was stayed by consent of the parties on July 24, 2015, before the parties had the opportunity to fully litigate their escalating discovery dispute. Doc. No. 27. The stay was lifted on March 3, 2017 upon resolution of the Liability Action. Doc. No. 29. Upon resumption of the Coverage Action, the parties engaged in a conference on April 21, 2017, during which they resolved several of the disputed discovery issues.[4] Def. Br. 3.

### C. Westfield's Motion and the Plaintiffs' Response in Opposition

Westfield filed a Motion to Overrule Plaintiffs' Objections to Defendant's Request for Production of Documents on May 1, 2017. Doc. No. 31. Westfield's motion comes more than two years after its requests were propounded. The motion addresses the discovery requests left unresolved after the conference on April 21, 2017.

The parties appear to agree that Westfield's eight requests for production fall into four broad categories: (1) unredacted copies of all documents filed under seal in the Liability Action; (2) all documents produced <u>to</u> the Plaintiffs in the Liability Action; (3)

---

[3] Plaintiffs sought the additional protective order in response to Westfield's March 23, 2015 Motion for Judgment on the Pleadings seeking dismissal of Plaintiffs' breach of contract claim. Doc. No. 9.

[4] Plaintiffs agreed to produce documentation they had produced in the Liability Action, along with identifying all deponents and corresponding court reporters in the Liability Action. Def. Br. 3.

4

the Settlement Agreement that concluded the Liability Action; and (4) the identities of all deponents in the Liability Action and the court reporters presiding at their depositions. Pls. Br. 3, Def. Br. 3. The Plaintiffs have agreed to produce the identities of the deponents and court reporters. Pls. Br. 5. The parties cannot agree on production of the remaining documents.

The Plaintiffs correctly point out that Westfield now seeks the Settlement Agreement but did not identify this specific document in their 2015 requests. Pls. Br. 5. However, the Plaintiffs appear willing to produce the Settlement Agreement provided they are allotted fourteen days "to comply with certain notice provisions found in the Settlement Agreement." Pls. Br. 5.

The Plaintiffs maintain their objection to the production of the documents produced to them by the other parties to the Liability Action, arguing in effect that they cannot produce what they do not have. Pls. Br. 4. The Plaintiffs state that they destroyed all documents received in the Liability Action pursuant to the Protective Order issued in that case. Pls. Br. 4. Regarding the documents filed under seal, the Plaintiffs put forth two arguments to support their objections. First, they argue that they cannot produce the documents because these documents, too, have been destroyed pursuant to the Protective Order. Pls. Br. 4-5. In the alternative, the Plaintiffs contend that they should not be required to produce the documents without a more particularized statement from Westfield as to the documents' relevance. Pls. Br. 4-5.

Beyond the motions, the Plaintiffs have asserted general and specific objections to Westfield's requests. *See* Pls. Br. Ex. B, ECF No. 31-4 6-13. I will address below the parties' motions, the Plaintiffs' Objections and Responses to Westfield's requests, and the Plaintiffs' destruction of documents.

## II. DISCUSSION

Discovery practice often leads to disputes, most of which are resolved without a judicial opinion. What happened here deserves comment.

**A. The Plaintiffs' Objections to Westfield's Requests for Production**

The Plaintiffs' general and specific objections to Westfield's May 4, 2015 Request for Production of Documents are overruled.

General objections in and of themselves are not explicitly prohibited by the Federal Rules. *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 139 (3d Cir. 2009). Neither are they encouraged. *See, e.g.*, Fed. R. Civ. P. 34(a)(2)(B) (specificity required when objecting to requests for production of documents). A general objection may be the subject of sanction where it is interposed to shield a large volume of discoverable material from production based on a small portion of that material being protectable. *Grider*, 580 F.3d at 139-40.

Here, the Plaintiffs asserted general objections to each of Westfield's eight requests, claiming broad privilege protections and contending that the requested documents lacked relevance. Despite the passage of almost two years, and the settlement of the Liability Action, the Plaintiffs simply renewed and reaffirmed their general objections when confronted with Westfield's renewed motion in May of 2017, adding in laconic fashion that they had, in the meantime, destroyed many of the documents sought by Westfield. The notion that documents either produced or received by Plaintiffs in the Liability Action are irrelevant to this coverage action is not credible. As for the Plaintiffs' generalized claims of privilege, they do not satisfy the Plaintiffs' burden to establish that a relevant document can be withheld. *See* Fed. R. Civ. P. 26(b)(5).

### B. The Plaintiffs' Objections to the Relevance of the Documents Requested by Westfield

There is little question that the documents requested by Westfield fall within the scope of discovery contemplated by the Rules of Civil Procedure. Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

Westfield seeks documents used by the Plaintiffs to develop their fidelity proof of loss (Reqs. 1, 8), documents used by the Plaintiffs to present their insurance claim to a Westfield representative prior to this litigation (Req. 2), documents produced by and to the Plaintiffs in the Liability Action (Reqs. 3-5), and documents produced by and to the Plaintiffs in related litigations (Reqs. 6-7).Westfield's requests can be broadly grouped into two basic categories: documents related to the presentation of the Plaintiffs' insurance claim (Reqs. 1, 2, 8) and documents produced in related litigations involving the employee conduct giving rise to the insurance claim (Reqs. 3-7). Both categories have one thing in common: they are self-evidently relevant to developing the defenses asserted by Westfield. The documents that were produced and received by the Plaintiffs in the Liability Action related to the claims of employee dishonesty that form the gist of the Plaintiffs' insurance claim, in this case. Whether they are admissible as evidence at trial is not the issue. Thus, both categories of documents are discoverable under Rule 26.

Even where the documents sought are plainly relevant, Rule 26 requires production to be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Given the obvious relevancy of these categories of documents, the fact that the documents were previously produced by, or requested by, Plaintiffs in the Liability Action, the amount in controversy, and the wherewithal of the parties to this litigation, there is no serious

proportionality argument under Rule 26. As such, all relevant documents shall be produced to Westfield.

### C. Destruction of Documents by the Plaintiffs

The Plaintiffs further resist providing responsive documents with the contention that they "cannot produce documents that [they do] not possess." Pls. Br. 4. In response to Westfield's requests, the Plaintiffs state that "it is simply impossible" to produce the requested documents. Pls. Br. 4. Production is "impossible" because the Plaintiffs "*had* to destroy all materials" received in the related litigations in accordance with the Protective Order and "therefore ha[ve] no documents from other parties to produce." Pls. Br. 2 (emphasis added).

I find this position troubling for three reasons.

First, the Plaintiffs received Westfield's requests in 2015 during the pendency of the Liability Action. The Plaintiffs objected to Westfield's requests within thirty days. Westfield's counsel immediately sent the Plaintiffs a letter demanding production. Def. Br., Ex. C. This exchange demonstrates that the Plaintiffs had actual knowledge of Westfield's requests almost two years prior to the Plaintiffs' destruction of the requested materials.

The Plaintiffs also had actual knowledge of the escalating discovery dispute, accompanied by knowledge that the dispute had not been resolved at the time this action was stayed. At the time of the initial discovery demand, the Plaintiffs had an obligation to preserve and produce the documents requested, subject to a court order, or an agreement with Westfield, addressing and resolving their objections and the scope of production. A party may not unilaterally destroy documents that are the subject of a discovery request. The Plaintiffs know that. Their argument that the Protective Order

required the destruction of documents fails to recognize their countervailing obligations to preserve the documents under the SPO and the Rules of Civil Procedure. *See U.S. v. Bryan*, 339 U.S. 323, 332 (1950) (a defense of inability to comply with a subpoena "must fail in the absence of even a modicum of good faith in responding to the subpoena."); *cf. Chairs v. Burgess*, 143 F.3d 1432, 1438 n.11 (11th Cir. 1998) (merely being subject to conflicting court orders is not a *per se* defense to contempt; how the party goes about resolving ostensibly conflicting legal obligations is germane to an assessment of good faith); *Linde v. Arab Bank, PLC*, 706 F.3d 92, 110 (2d Cir. 2013) (parties caught between competing discovery obligations imposed by different sovereigns must demonstrate good faith in attempting to resolve the conflict).

Second, the Plaintiffs voluntarily entered into the SPO authorizing materials produced in the Liability Action to later be produced in the Coverage Action. The Plaintiffs not only had actual knowledge that Westfield sought documents produced in the Liability Action, the Plaintiffs negotiated the SPO as a device for allowing them to supply the materials to Westfield. A party cannot claim an incapacity to comply that is self-inflicted. *See Bryan*, 339 U.S. at 333. Plaintiffs' inability to produce the documents requested by Westfield is self-inflicted. Accordingly, it falls on the Plaintiffs, not Westfield, to remedy any noncompliance.

Third, the Plaintiffs "destroy[ed] all materials" without giving notice to Westfield or to the court. Def. Reply Br. 1. This destruction occurred at some point in or after January 2017, when the Liability Action settled on the eve of trial. At that time, the Plaintiffs had full knowledge that they were embroiled in a discovery dispute with Westfield involving those same documents. Any supposed conflict with the requirements of the Protective Order "could have been rectified in a few minutes" by

9

bringing the conflict to the attention of the judge who entered the protective order. *Id.* Refusing to bring to the attention of the court such a "trifling" reason for non-compliance with the obligation to turn over documents looks more like a "subterfuge" than a valid excuse for not producing the documents. See *id.* (internal quotations and citation omitted).

I reject the Plaintiffs' argument that the Protective Order obligated them to destroy all materials generated in the Liability Action, without notice to Westfield. The Protective Order in the Liability Action was extended to include Westfield, in contemplation of Westfield being privy to the documents produced in that action. The Protective Order was extended upon agreement of all parties to the Liability Action, not just the Plaintiffs and Westfield. The other parties to the Liability Action consented to the production of "their" documents to Westfield. The explicitly stated purpose of the SPO was to protect the confidentiality of the Liability Action documents when they were eventually produced in the Coverage Action. Any notion that the Plaintiffs owed the producing parties, in the Liability Action, a duty to destroy documents without turning them over to Westfield is negated by the consent of the producing parties to the production of documents to Westfield.

I find the Plaintiffs' assertions regarding their supposed obligation immediately to destroy the disputed documents, without notice, preposterous. The Plaintiffs will have the opportunity to recover the destroyed documents and produce them to Westfield in accordance with the accompanying Order.[5]

---

[5] The Plaintiffs' suggestion that "Westfield must subpoena … documents from the parties that possess them" is rejected. *See* Pls. Br. 4. The documents were already properly requested by Westfield. The Plaintiffs' inability to produce the requested

### D. Production of the Settlement Agreement

I will direct the Plaintiffs to produce a copy of the Settlement Agreement in the Liability Action to Westfield along with the other requested documents. I recognize, as the Plaintiffs point out, that Westfield did not include a request for the Settlement Agreement in its May 4, 2015 Request for Production. Pls. Br. 3, 5. This objection is not substantial. Westfield's requests were propounded approximately two years before the Settlement Agreement existed. Westfield's Request Number 5, which requests production of documents related to the Liability Action, covers the production of a Settlement Agreement. The Settlement Agreement certainly relates to the Liability Action.

The Plaintiffs advise they are obliged to give advance notice to the other signatories to the Settlement Agreement before producing the document to Westfield. The Plaintiffs shall satisfy their notice obligations at once, and produce the Settlement Agreement within thirty days of the issuance of the Order accompanying this Memorandum. The Settlement Agreement will be subject to the terms of the SPO.

### E. The Plaintiffs' Generalized Assertion of Privilege Without Provision of a Privilege Log

The Federal Rules of Civil Procedure facilitate broad and liberal discovery. *Pacitti by Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999). The Rules permit parties to obtain discovery regarding "any matter...relevant to any party's claim or defense," so long as the information or materials sought are not privileged. Fed. R. Civ. P. 26(b)(1).

When a party withholds information based on a claim of privilege, they are obligated by the clear language of Rule 26(b)(5) to provide the requesting party with

---

documents was occasioned entirely by unilateral action of the Plaintiffs. The Plaintiffs will bear the burden of recovering the documents.

detailed information supporting the claim of privilege. This information is usually rendered in the form of a privilege log. Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii). The Rule requires the party claiming privilege to make an express claim and "describe the nature of the documents ... not produced ... and do so in a manner that, without revealing information itself privileged and protected, will enable other parties to assess the claim." *Id.* An express claim of privilege supported by an appropriate level of detail also allows the Court to assess claims of privilege and meaningfully moderate any resulting discovery disputes.

The Plaintiffs have asserted a generalized privilege objection (Doc. No. 31-4 at 6) and further objected individually to three of Westfield's eight requests with boilerplate privilege objections.[6] Doc. No. 31-4 at 8, 9, 10. At oral argument the Plaintiffs' counsel explained that the documents already produced by the Plaintiffs – all documents produced by Plaintiffs in the Liability Action – had already been culled of privileged items, so that there were no documents within the set of documents covered by the request that had been withheld. I accept this explanation. Nevertheless, it is useful to overrule the Plaintiffs' all-encompassing objections because they do not provide the specificity needed to establish privilege. If and when the Plaintiffs produce additional documents, it should be clear that any documents withheld under a claim of privilege will be accompanied by a detailed privilege log containing sufficient description of the

---

[6] For an illustrative example, the Plaintiffs object to Req. 1 "to the extent that it seeks privileged attorney-client communications, work product, *and/or any other applicable privilege.*" (emphasis added). The Plaintiffs object without identifying the specific privilege that forms the basis for their objection, let alone identifying specific documents purportedly protected by the privilege.

12

withheld documents to establish the claim of privilege with particularity.[7] I will also direct that Plaintiffs produce to Westfield all privilege logs produced by them in the Liability Action, in the event Westfield wishes to contest a claim of privilege in this case.

Courts addressing similar factual scenarios have held that failure to substantiate a claim of privilege can amount to waiver, although the case law generally discourages findings of waiver. *See, e.g., U.S. v. British American Tobacco (Investments) Ltd.*, 387 F.3d 884, 890–91 (D.C. Cir. 2004) (the possibility that a party genuinely believed that a non-privilege objection covered a document counseled against deeming the absence of a privilege log, as to that document, to be a waiver of the privilege claim); *U.S. v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003); *but see Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (waiver enforced against a sophisticated commercial entity who had a long history of litigation of the same issue in related litigation, where the log was produced four months late).

Here, a finding of wholesale waiver of any privilege claims may be unnecessarily harsh. Under the circumstances, it is sufficient to overrule the Plaintiffs' existing, generalized claims of privilege because Plaintiffs have not borne the burden of establishing privilege with the requisite degree of specificity. *See* Fed. R. Civ. P. 26(b)(5).

---

[7] The Plaintiffs are well aware of the necessity and utility of a privilege log, having engaged in privilege litigation in the Liability Action. *See, e.g., Spear* Doc. No. 369, Plaintiffs' (Ms. Spear and the ESOP) Motion to Compel and Continue Deposition Testimony of Defendant (asking the Court to overrule Defendants' privilege objections); *see also Spear* Docs. No. 365, 385, 400, 435, 441, 442, 449 (Motions exchanged between Plaintiffs and parties in the Liability Action litigating discovery dispute involving claims of privilege).

An appropriate order follows, directing the Plaintiffs to produce the documents sought by Westfield.

BY THE COURT:

_s/Richard A. Lloret_
RICHARD A. LLORET
UNITED STATES MAGISTRATE JUDGE